**RICKENBAKER v. LAYTON et al.**

Civ. A. No. 1068.

District Court, E. D. South Carolina, Aiken Division.

Feb. 22, 1944.

Supplemental Opinion March 16, 1944.

Williams & Busbee, of Aiken, S. C., for plaintiff Rickenbaker.

Chas. B. Elliott, of Columbia, S. C., and John E. Stansfield, of Aiken, S. C., for defendant Layton.

Herbert & Dial, of Columbia, S. C., for defendant Maryland Casualty Co.

TIMMERMAN, District Judge.

The plaintiff Rickenbaker was injured in an automobile accident *January 15, 1940.* The automobile involved in the accident was owned by the defendant Layton and was being operated by the defendant Smith, Layton's agent. Rickenbaker brought an action in the Court of Common Pleas for Aiken County, South Carolina, against Layton and Smith to recover damages for the injuries sustained by him in said accident. In that suit *Rickenbaker recovered a verdict for $2500 on the 24th day of November, 1942.* Judgment was entered on said verdict and for the costs of the action, $30.40. An execution was issued out of said State Court for the collection of said judgment and it was delivered to the Sheriff of Aiken County for service. The Sheriff made a nulla bona return on said execution.

*On May 20, 1939,* the defendant Maryland Casualty Company issued and delivered to the defendant Layton a policy of indemnity insurance covering bodily injuries and property damage that might be caused in the operation of the automobile in question. *The term of the policy was one year.*

After the nulla bona return, as aforesaid, *the plaintiff commenced this action August 2, 1943,* in the Court of Common Pleas for Aiken County, aforesaid, against the above-named defendants to recover judgment against the Maryland Casualty Company, under said policy, for the amount recovered in the State Court action and for the costs thereof. The defendant Layton, the insured under said policy, filed a cross-claim against his codefendant Maryland Casualty Company to require said company not only to pay the judgment and costs recovered in the first case but also to recover the additional sum of $500 which he had paid as attorneys' fees for the defense of said action, due to the alleged failure of his insurer, the Maryland Casualty Company, to defend said suit in his behalf. The cross-claim supplied the jurisdictional amount, and the Maryland Casualty Company, being a nonresident, removed *the cause* to this court wherein it came on for trial on *February 15, 1944.*

*The Maryland Casualty Company,* answering the complaint and the cross-claim of its codefendant Layton, *admitted that the plaintiff Rickenbaker "brought a suit against A. W. Layton and Frank Smith and accorded (recovered) a judgment as alleged in paragraph two of the cross-action", and that it had refused to defend said suit on behalf of its codefendant A. W. Layton.* Further answering, the defendant Maryland Casualty Company alleged "*that the defendant A. W. Layton had had a policy of insurance with this defendant insuring the said A. W. Layton and indemnifying for all judgments or claims as alleged in said paragraph, but that said policy had been cancelled by agreement prior to the date of the alleged accident,* and the policy covering the automobile in question at the time of the accident, by its express provisions, did not insure against the claim referred to in the cross-action, and this defendant is and was under no obligation or liability to the plaintiff or its co-defendants by reason of the matters alleged in the cross-action". In other words, the position of the defendant Maryland Casualty Company was that the policy of May 20, 1939, had been cancelled as of December 31, 1939, and that a new policy (fleet policy) had been issued in its stead, effective January 1, 1940, which covered the automobile in question as well as

other automobiles of the defendant Layton; and that under said new or fleet policy the defendant Layton was not insured against the claim made the subject of the State Court action.

By agreement of the parties this case was tried by a Court without a jury. *Before proceeding formally with the trial it was stipulated that the Maryland Casualty Company had issued, on May 20, 1939, a policy of insurance covering the automobile of the defendant Layton which injured the plaintiff Rickenbaker on January 15, 1940, and that by the terms of said policy it was to continue in force for one year, unless sooner cancelled.* Since the Maryland Casualty Company was contending that the policy of May 20, 1939, had been cancelled as of December 31, 1939, and a new or fleet policy issued in its stead, effective January 1, 1940, *it was further stipulated that the defendant Maryland Casualty Company would be liable as charged if the policy of May 20, 1939, was actually in force on January 15, 1940,* the date of the injuries sustained by Rickenbaker, and that the defendant Maryland Casualty Company would not be liable if said policy had been cancelled and the new fleet policy substituted for it prior to said date, as claimed by said defendant. *This made a clear-cut issue as to which policy was in force on January 15, 1940, it being understood that judgment would follow the decision on that point.*

What follows is a brief summary of the evidence. The plaintiff offered in evidence Judgment Roll No. 8085 from the office of the clerk of Court of Common Pleas for Aiken County, South Carolina, in the case of C. P. Rickenbaker, plaintiff, against A. W. Layton and Frank Smith, defendants. This judgment roll showed substantially what is recited hereinabove as to the bringing of said first action, the verdict returned, the judgment entered on November 24, 1942, the issuance of the execution, and the nulla bona return. (Plaintiff's Exhibits 1 and 2.)

*At this point it was admitted that Layton had duly reported to his insurer, the Maryland Casualty Company, the accident in which Rickenbaker was injured as well as the claim that Rickenbaker had made for injuries sustained therein, and further that the Maryland Casualty Company had been advised of the suit brought by Rickenbaker against Layton and Smith and had declined to defend the same.* It was also admitted that the fee paid by Ricknbaker to his attorneys to defend said suit was reasonable.

The plaintiff also offered in evidence, Exhibit 3, a Service Card, issued to him by Maryland Casualty Company, which confirmed the issuance of the policy of May 20, 1939, covering the automobile involved in said accident.

On the part of Maryland Casualty Company two witnesses were sworn. The first one, a Mr. Colquitt of Phenix City, Alabama, testified that he had been employed as a bookkeeper and insurance salesman by C. L. Mullin & Company, Insurance Agents, with offices in Phenix City, Alabama, although he was not so employed at the time of his testimony and had not been for some time. That he had handled the insurance policy issued on May 20, 1939; that the insurance agents whom he represented were agents of the Maryland Casualty Company at the time of the issuance of said policy and at the time of the claimed issuance of the fleet policy above referred to. That sometime during the month of December, 1939, he could not fix the date, either the defendant Layton or a Mr. Clayton of Alabama, with whom Mr. Layton had frequent business transactions, one or the other, or both, he didn't know which, applied to him for a fleet policy of insurance to cover all of the automobiles of Mr. Layton which was to be in substitution for all outstanding policies of insurance covering the several automobiles of Layton, and that said fleet policy was to supersede the other policies, effective January 1, 1940. While Mr. Colquitt stated that Mr. Layton and Mr. Clayton had had a number of business transactions, he testified to no facts which could possibly lead to the conclusion that Mr. Layton had constituted Mr. Clayton his agent to cancel or accept insurance policies in his behalf. During the testimony of Mr. Colquitt, Policy No. 15–068958, dated December 31, 1939 (the fleet policy), was admitted in evidence as defendant's Exhibit A, subject to proof that it was effective on the date of the accident, January 15, 1940. Admittedly, this policy had a more restricted coverage than did the policy of May 20, 1939. There were numerous "riders" attached to said fleet policy, two of which apparently were to have been signed by the insured Layton, and both of which restricted liability under the policy. Neither of these "riders" or "endorsements", although attached to the policy, bore the signature of the defendant Layton, only a blank line place for his signature, following the word "Accepted", was provided.

The second and only other witness for the defendant Maryland Casualty Company was Mrs. Irma Dunn, a bookkeeper and stenographer in the office of C. L. Mullin & Company, above referred to. She identified a number of Exhibits that were offered and received in evidence. Defendant's Exhibit B purports to be a carbon copy of a letter written by C. L. Mullin & Company to A. W. Layton, Columbia, S. C., on January 11, 1940. This letter reads as follows:

"We are enclosing herewith Service Cards for automobiles covered under your new fleet policy. We are also enclosing two endorsements to be signed and returned to us in the enclosed self-addressed envelope. Please also return for cancellation the Maryland Casualty Policies you have on hand.

"We will forward your new fleet policy at an early date."

Defendant's Exhibit C is a carbon copy of a letter from C. L. Mullin & Company to Maryland Casualty Company, Atlanta, Georgia, dated January 22, 1940. The relevant portion thereof reads as follows: "Re: No. 15–068958—A. W. Layton * * * We are enclosing herewith endorsements to be attached to the above captioned policies."

Defendant's Exhibit D is also a carbon copy of a letter from C. L. Mullin & Company to A. W. Layton, dated January 22, 1940, which reads as follows:

"We are enclosing herewith Maryland Casualty Policy No. 15–068958 for $5,000/10,000 Bodily Injury and $5,000 Property Damage liability on your fleet of automobiles.

"The policies you returned will be cancelled as of December 31, 1939, and we will credit your account with the return premium".

Defendant's Exhibit E consisted of several carbon copy insurance form sheets, apparently retained in the office of C. L. Mullin & Company. These forms were partially printed with blank spaces which had been filled in with a typewriter, but there were no dates on the forms to indicate when the typewriting was done, although spaces were provided for the entry of dates. On the face of each of these records there is an endorsement in red ink to the effect that the referred to policy had been cancelled "as of 12/31/39" with return premium credits. On the particular form of the series concerning the policy covering the automobile causing the injuries alleged this

additional endorsement appears in red ink following immediately after what is referred to above, viz.:

"(Lost Policy Release
Mailed 1–22–40)"

That endorsement indicates that it was made on or sometime after January 22, 1940, as it appears to be a record of a past occurrence.

Defendant's Exhibit F is a ledger sheet purporting to show the account of A. W. Layton with C. L. Mullin & Company. It discloses that certain credits were entered thereon as of January 1, 1940, of which one is a credit for a return premium on the policy of May 20, 1939. Following the entry last referred to are several other similar credit entries relating to other policies.

Defendant's Exhibit G is a carbon copy of a letter purportedly written by C. L. Mullin & Company to one J. Carl Kane, Special Agent, Maryland Casualty Company, Atlanta, Georgia, on December 28, 1939, requesting an addition by endorsement of another automobile to the fleet policy coverage. Other papers are attached to some of the Exhibits which were not offered in evidence.

The testimony of Mrs. Dunn was confined largely to the identification of the Exhibits mentioned and to attesting the mailing dates of the letters offered in evidence.

At the close of the testimony on behalf of the defendant Maryland Casualty Company, the defendant A. W. Layton testified that he never requested the issuance of the mentioned fleet policy and had not agreed to the cancellation of the policy of May 20, 1939, until sometime after January 15, 1940. He further testified that he had never given Mr. Clayton, the gentleman referred to in Mr. Colquitt's testimony, any authority to act for him in any matters pertaining to the securing or cancelling of policies of insurance with the defendant or any other company. He also testified that the first he heard of the fleet policy was about January 25, 1940, ten days after the accident in question, and that on that date he received a policy through the mail along with certain Service Cards pertaining thereto. That the two endorsements which the defendant Maryland Casualty Company wished him to accept and sign were attached to the fleet policy of insurance when he first saw it. Additionally, Layton testified that he had no recollection of ever having signed said endorsements at any time and that he knew he

456

could not possibly have signed them before January 25, 1940, because he had not seen them before then. This witness was later recalled and testified that he had authorized the defendant Smith to employ others to assist him in his work.

█ The defendant Smith testified, although he filed no responsive pleading in the case. He stated that, on the date of the accident, he had employed Mr. Rickenbaker to show him the way to the places of business of prospective customers to whom he was attempting to sell products of his principal, Mr. Layton, and that Mr. Rickenbaker was injured while so employed and riding in the automobile of Mr. Layton about Mr. Layton's business.

*Upon the close of the testimony the defendant Maryland Casualty Company moved to amend its answer so as to conform it to the proof by alleging that Mr. Rickenbaker when injured was an employee of Layton, the insured, and engaged in business for the insured. This motion was predicated upon the assumption that the policy of May 20, 1939, excluded employees of the insured from coverage, as admittedly the new or fleet policy did, in these words:* "This policy does not apply: * * * (f) under coverage A, to bodily injury to or death of any employee of the insured while engaged in the business, other than domestic employment, of the insured, or while engaged in the operation, maintenance or repair of the automobile; or to any obligation for which the insured may be held liable under any workmen's compensation law; * * *."

*The motion to amend was denied for two reasons: First, because it had been stipulated that the defendant Maryland Casualty Company would be liable if the policy of May 20, 1939, was of force at the time of the accident on January 15, 1940, and that said defendant would not be liable if the fleet policy was of force on that date. Second, because there was no evidence that the policy of May 20, 1939, contained the exclusion quoted from the fleet policy. The stipulation implies that no such provision was embraced within the terms of the old policy. The old policy was not produced, and there was no testimony as to terms other than what was conceded by the stipulation.*

Further brief references should be made to some of the Exhibits of the defendant Maryland Casualty Company. Exhibit B purports to be a carbon copy of a letter written by C. L. Mullin & Company, Agents of the Casualty Company in Phenix City, Alabama, to Mr. Layton, the insured, on January 11, 1940. This is the letter that Mr. Layton denied receiving, but assuming that it was sent and that it was received by Mr. Layton, the letter is contradictory in its terms. First, it says that Service Cards, for automobiles covered by the fleet policy, were being sent. Next, it indicates the enclosure of two endorsements for the signature of the insured so as to make them a part of the fleet policy. Following this, a request is made for the return of old policies so that they may be cancelled. There is no suggestion in the letter that the old policy had been cancelled as of December 31, 1939. And finally the letter promises that the proposed new fleet policy will be delivered at an early date. I hardly see how it could become effective before delivery. Then, too, the endorsements when accepted were to have become a part of the policy, and admittedly they had not been accepted at that time.

The next two Exhibits, C and D, appear to be in conflict. Exhibit C purports to be a letter by the Mullin Agency to the Maryland Casualty Company in Atlanta, Georgia, on January 22, 1940. In this letter the Mullin Agency stated that it was sending the *insurer* endorsements to be attached to the fleet policy. Yet Exhibit D, bearing same date as Exhibit C, a letter written by the Mullin Agency to the defendant Layton, the *insured*, stated that the fleet policy was being sent to him. I cannot understand why this agency would be sending endorsements to the *insurer* in Atlanta to be attached to a policy of insurance which it knew was in its possession and which it was mailing on that date to the *insured* in Columbia. It is to be noted also that both Exhibits were written a week after the accident in question in this suit, and that Exhibit D, the letter to the insured, stated that the old policies "will be cancelled as of December 31, 1939, and we will credit your account with the return premium." This indicates that the old policy had not been surrendered for cancellation and that no credit for a return premium had been made a week after the accident occurred which gives rise to liability claimed. If the statement just quoted be accepted as the literal truth, then it must follow that the credit for a return premium appearing on Exhibit F, although bearing date January 1, 1940, actually was not entered until after January 22, 1940.

Moreover, on one of the sheets of Exhibit E, the one relating to the policy of May 20, 1939, we find the following endorsement, in red ink: "(Lost Policy Release Mailed 1–22–40)". Since it was developed upon the hearing that the "Lost Policy" was the one here in question, bearing date May 20, 1939, this endorsement on the record of the agent of the Maryland Casualty Company indicates that that policy had not been cancelled or delivered up for cancellation seven days after the accident in question.

From the foregoing, I find as facts:

1. That the defendant Maryland Casualty Company issued its policy No. 15–782303 on May 20, 1939, to expire May 20, 1940, covering a 1939 Ford automobile, No. 18–5051245. That said automobile belonged to A. W. Layton and was involved in the accident in question. That the coverage of said policy included personal injuries not to exceed $5,000 to any one person, or $10,000 in the aggregate.

2. That said policy of insurance continued in force from the date of its issuance to and through January 15, 1940.

3. That Policy No. 15–068958 (the referred to fleet policy) of Maryland Casualty Company had not been accepted and was not of force and in effect on January 15, 1940, or at any time prior thereto.

4. That it was stipulated by the parties hereto that the defendant Maryland Casualty Company's liability in this action should be regarded as established if said policy issued May 20, 1939, should be found to be of force and in effect on January 15, 1940.

I find as a matter of law that since it has been found as a matter of fact that Policy No. 15–782303 was of force and in effect on and through January 15, 1940, the plaintiff C. P. Rickenbaker and the defendant A. W. Layton are entitled to judgment as prayed for in their respective pleadings against the defendant Maryland Casualty Company, that is to say, that the plaintiff is entitled to judgment against said defendant Maryland Casualty Company for the sum of $2,500 with interest thereon at the legal rate from the date of the verdict for that sum returned in his favor in said State Court in the case of C. P. Rickenbaker v. A. W. Layton and Frank Smith, and for the taxed costs in said action amounting to $30.40 with interest thereon from the date of the taxation of said costs in the State Court; and that the defendant A. W. Layton is entitled to a judgment in his favor against said Maryland Casualty Company for the additional sum of $500, the reasonable fee of his attorneys in said State Court action. I further find that judgment should be entered against the defendant Maryland Casualty Company for the costs of this action.

An order for judgment in accordance with the foregoing views will be signed upon presentation.

### Supplemental Opinion.

I filed a decree in this cause on February 22, 1944, and it is now before me again on two motions of the defendant Maryland Casualty Company. The first motion is to set aside the verdict and judgment entered on the several grounds stated in the notice of motion, and the second one is for a new trial on after-discovered evidence.

In the first motion the defendant Maryland Casualty Company takes exception to the following statement contained in the aforementioned decree: "It was further stipulated that the defendant Maryland Casualty Company would be liable as charged if the policy of May 20, 1939, was actually in force on January 15, 1940, the date of the injuries sustained by Rickenbaker, and that the defendant Maryland Casualty Company would not be liable if said policy had been cancelled and the new fleet policy substituted for it prior to said date, as claimed by said defendant."

After consultation with counsel I am of the opinion that the latter part of the above-quoted statement is in error, that is that portion which states that the Maryland Casualty Company would not be liable in this action if the policy of May 20, 1939, had been cancelled prior to January 15, 1940; and the decree will be amended accordingly. However, I do not think this correction in any way affects the conclusions reached in the decree for reasons stated therein.

The Casualty Company also takes exception to so much of the decree as allowed judgment against it in the sum of $500 as a reasonable fee for the attorneys of the defendant Layton in the State Court action to which reference is made in the decree. It is the contention of the Casualty Company that $400 was the amount agreed to in case judgment went against the defendant Casualty Company. The attorneys for the defendant Layton agree with this contention and the judgment will be changed accordingly. While the cross-claim of the defendant Layton was for $500 as a reasonable fee

458

for his attorneys in said State Court action and the defendant Maryland Casualty Company admitted the reasonableness of the claim in its answer, it now appears that the attorneys for the respective parties agreed before the commencement of the trial that the recovery should be only $400 in case judgment went against the Casualty Company.

*The third ground upon which the defendant Maryland Casualty Company relies* to support its motion to set aside the judgment herein and grant a new trial *is an alleged error of the Court in refusing to permit the Casualty Company to amend its answer after the close of the testimony to conform to the proof.* Upon the trial the plaintiff introduced evidence tending to show that the plaintiff Rickenbaker was an employee and about the business of the defendant Layton, the insured, at the time of his alleged injuries. The fleet policy referred to in the decree contained the following provision, under the heading of "Exclusions", to-wit:

"This policy does not apply:  *  *  * (f) under coverage A, to bodily injury to or death of any employee of the insured while engaged in the business, other than domestic employment, of the insured, or while engaged in the operation, maintenance or repair of the automobile;  or to any obligation for which the insured  may be held liable under any workmen's compensation law."

*The Court having reached the conclusion that the fleet policy was not of force at the time of the alleged injury, but that the earlier policy of May 20, 1939, was of force at said time, and there being no evidence before the Court to the effect that the policy of May 20, 1939, contained the same or a similar provision, there was no point in allowing the amendment asked for.*  The defendant Maryland Casualty Company agreed at the outset of the case that if the policy of May 20, 1939, was of force on January 15, 1940, it would be liable as charged in the complaint and in the cross-claim of the defendant Layton.  That stipulation on the part of the Casualty Company made it unnecessary for the plaintiff or the defendant Layton to offer the original policy of insurance in evidence, and the defendant Maryland Casualty Company did not offer it in evidence or offer any proof of its contents.  There was some suggestion during the trial that the policy had been lost or mislaid.  *The defendant Maryland Casualty Company now contends that it did not know of the claimed relationship of employee and employer existing between the plaintiff and the defendant Layton when it assented to the stipulation* and that it would not have stipulated as it did had it known the facts.  Additionally, the Casualty Company now offers to tender proof that the policy of May 20, 1939, did contain an exclusion clause in substantially the same language as that quoted above from the fleet policy.  The Court is morally certain that *the attorneys for the defendant Casualty Company did not know of such relationship at the time of the stipulation, but it is equally certain that the Maryland Casualty Company in the exercise of due care for the protection of its own interests could and would have known of such relationship.  Admittedly they interviewed the plaintiff Rickenbaker shortly after the accident occurred, and also the insured Layton and his agent, Frank Smith, who was in charge of Layton's automobile at the time the plaintiff received his injuries while riding therein.*  There is no evidence that any one of the mentioned parties was asked about such relationship.  It is not contended, and certainly *there is no proof to the effect, that either Layton or Rickenbaker misrepresented any facts concerning said relationship to the defendant Casualty Company, upon which it relied to its detriment.  The Casualty Company was notified of the accident immediately after it happened and again when suit was brought in the State Court by Rickenbaker to recover damages* against Layton for the injuries alleged to have been sustained by him.  *Layton's attorney furnished the Casualty Company with a copy of the complaint and requested the Casualty Company to defend the suit in Layton's behalf,* claiming the right to have the Casualty Company do so under the terms of the policy of insurance.

*Rickenbaker commenced his action against Layton for damages on account of said accident in December, 1941.  The complaint in that action, a copy of which was furnished the defendant Casualty Company,* with the request that it defend said suit, *alleged that the automobile causing plaintiff's injuries on January 15, 1940, was owned by the defendant A. W. Layton, and that it was in charge of Frank Smith, an agent and representative of Layton, who was at the time engaged in business on behalf of his principal Layton.  This complaint further charged that Rickenbaker, the*

*plaintiff, "was engaged by the defendant, Frank Smith, acting within the scope of his authority, to go along with him and point out to him locations of several of his customers, pursuant to said arrangement with the defendant, Smith, the plaintiff and said Smith went around the route that plaintiff was serving and said Smith was pointed out by the plaintiff the locations of each of the customers that the defendant, Smith, was looking for." This allegation was enough to put the defendant Casualty Company on inquiry as to the plaintiff's connection with Layton. The complaint says that Smith acting in the scope of his authority engaged the plaintiff to go along with him about his principal's business. If the allegations of the complaint were literally true, if Smith had the authority to engage helpers to assist him in his work for Layton, and if acting under that authority Smith did engage Rickenbaker to assist him, then Rickenbaker would be an employee of Layton.*

The fourth ground upon which Maryland Casualty Company relies is a variation of the point considered under the third ground. *If defendant's motion to amend its answer at the conclusion of the testimony had been granted, the amendment could not have availed said defendant for the reason there was no evidence upon which the Court could possibly base a conclusion that the policy of May 20, 1939, contained a provision similar to the one quoted from the fleet policy.* Said defendant's stipulation that it would be liable as charged by the plaintiff and by the defendant Layton, if the policy of May 20, 1939, was of force on January 15, 1940, made it unnecessary to prove the terms of said policy, and as previously stated there was no proof of the terms of said policy except as they were to be implied from the stipulation.

■ *That the defendant Maryland Casualty Company recognized the inherent weakness of its motion to set aside the verdict and judgment entered on the grounds stated is evidenced by its supplementary motion for a new trial on after-discovered evidence.* In support of this motion Maryland Casualty Company submits for the consideration of the Court what purports to be the original cancellation receipt of the policy of May 20, 1939 (No. 15–782303), signed by the defendant Layton. This cancellation receipt apparently was not executed and delivered to the Casualty Company prior to January 23, 1940, eight days after the date

of Rickenbaker's injuries. This cancellation receipt purports to cancel the policy of May 20, 1939, as of December 31, 1939, and to release said company "from all liability under said policy for any and all occurrences and contingencies *happening* after" December 31, 1939. (Italics added.) The word "happening" implies something to occur in the future, not something that had already occurred. Moreover, the Maryland Casualty Company did not plead a release of liability, although according to its contention it was in possession of the asserted release when it filed its answer and remained in possession thereof until after the trial of this case. Besides, the cancellation receipt shows no consideration for a release of an existing liability. It is true, as argued, that the substitution of a new policy for the older ones would entitle Layton to a premium adjustment, since the coverages of the old and new policies were different, but that would not be effective as a consideration for the release of an existing obligation. The adjustment of accounts between the parties related solely to premiums, not to an outstanding obligation arising under the terms of a policy which was of force at the time of the happening of the event that gave rise to the obligation.

■ *One of the reputable attorneys for the defendant Maryland Casualty Company submitted an affidavit in support of this last contention, stating in effect that he had requested the home office of the Maryland Casualty Company and its branch offices in Atlanta, Georgia, and Charlotte, North Carolina, to locate and produce all papers referred to in its motion, and that he was "informed and believes largely because of the confusion due to war conditions the file had been misplaced and could not be found."* This attorney further stated in his affidavit that repeated efforts were made to locate copies of the original papers *after the trial of this case and that finally the originals were located;* and that he believed that an honest effort had been made in good faith to produce said papers prior to the trial but that they had not been located in time for the trial.

I do not think that the showing made will sustain the motion for a new trial on after-discovered evidence. Rule 59(b), Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides: "A motion for a new trial shall be served not later than 10 days after the entry of the judgment, except that a motion for a new trial on the ground of

460

newly discovered evidence may be made after the expiration of such period and before the expiration of the time for appeal, with leave of court obtained on notice and hearing *and on a showing of due diligence.*" (Italics added.)

*I am of the opinion that the showing made does not warrant an inference of due diligence, but rather an inference of a lack of due diligence.* The cancellation receipt was in the possession of the defendant Casualty Company at all times from January 23, 1940, to the date of the filing of the decree herein, February 22, 1944, or for more than four years. *According to the defendant's motion papers it located said papers within less than four weeks after the decree was filed. There is no satisfactory explanation of why the Maryland Casualty Company could not or did not locate the paper in question within four years, when it could and did, according to its own contention, locate it within four weeks after the expiration of four years.* It is inconceivable that a large concern, such as the Maryland Casualty Company, could not produce a paper of the character here in question if it had used due diligence, especially so when it had repeated notices of a substantial claim against it growing out of the issuance of a policy of insurance to which the very paper in question related. The Maryland Casualty Company certainly knew the form of cancellation receipt it used in cases of the character here in question. *If it had ascertained before the trial that the paper in question was lost, it could easily have produced proof of loss and then offered secondary evidence of the contents. It did not do that. It took its chance on the trial without using the paper and stipulated that it would be liable if the policy of May 20, 1939, was of force on January 15, 1940. The Maryland Casualty Company now contends that the paper in question is material to its defense, and that it goes to the primary issue in the case of whether the policy of May 20, 1939, was of force on January 15, 1940. Yet it did not produce that paper on the trial, nor did it put itself in a position to prove the contents thereof by secondary evidence; and what is more it did not even plead a release of liability. The record shows a woeful lack of diligence on the part of the defendant, and a new trial will not be granted upon the ground stated.*

The decree filed herein on February 22, 1944, and the judgment entered thereon will be amended in the particulars hereinabove stated; and the motions to set aside the judgments herein and to grant a new trial will be refused.

It is so ordered.